c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| EQUILIBRIUM CATALYST, INC., Plaintiff | CIVIL ACTION NO. 1:20-CV-01159 |
| VERSUS | JUDGE JOSEPH |
| VINCENT P. SCALLAN, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand (ECF No. 6) filed by Plaintiff Equilibrium Catalyst, Inc. ("ECI"). ECI asserts the underlying cause of action does not arise under federal law. ECF No. 6-1 at 1-7. Defendants Vincent P. Scallan ("Scallan"), in his capacity as Independent Co-Executor of the Succession of Allen J. Schick (the "Schick Estate"), and Joseph A. Schick ("Schick"), in his capacity as Independent Co-Executor of the Schick Estate (collectively, "Defendants") oppose. ECF No. 8.

Because ECI's right to relief does not necessarily depend on the resolution of a substantial question of federal law, ECI's Motion to Remand (ECF No. 6) should be GRANTED.

I. Background

ECI filed a Petition for Declaratory Judgment (the "Petition") (ECF No. 1-1) in the Tenth Judicial District Court, Natchitoches Parish, Louisiana against Defendants. In May of 2015, Allen J. Schick ("Allen") was the Chief Financial Officer of ECI and Steven Van Eversull was the President of ECI. ECF No. 1-1 at 1. On May

12, 2015, as officers of ECI, they executed a "Memorandum of Understanding" ("MOU") which provided a compensation mechanism for the signatories who elected a "voluntary retirement" from ECI, as defined by the MOU. *Id.* at 1. For signatories exercising the "Voluntary Retirement Option," the MOU provided the signatory to be paid:

> (1) An initial amount equal to three months' deferred compensation, based on net income (profit) from all sources (the "Deferred Compensation Payments");
> (2) An amount equal to 12% of company net income (profit), based on income from all sources, less expenses, beginning after repayment of the Deferred Compensation Payments, and continuing until a total of $14,000,000 is paid and distributed to the Retiree or his estate (the "Compensation Payments" or the "Retirement Period"), subject to potential adjustment on a subsequent sale of the companies provided in Section 5.f. of the 2015 MOU; and
> (3) An amount equal to the signatory's retained equity in the company (the "Retained Equity Amounts") within nine months from exercise of the Voluntary Retirement Option.

ECF Nos. 1-1 at 1, 8-1 at 14-15.

ECI asserts the MOU expressly provides the first two items are compensation, which under applicable statutes and IRS regulations and rulings is deductible by the payor and taxable income to the payee. ECF No. 1-1 at 2. ECI further alleges that it was the intent of all signatories to the MOU that the recipient of the Deferred Compensation Payments, Compensation Payments, and Retained Equity Payments would be responsible for all income taxes and other taxes due. *Id.* ECI further contends the signatories intended that ECI would pay no taxes associated with the payments, and that ECI would take deductions for the payments. *Id.*

Allen passed away on November 15, 2019. *Id.* The MOU provides that if a signatory dies during the Retirement Period, "the remaining compensation is paid under the existing schedule to his estate, as per Section 5(b)" of the MOU. ECF Nos. 1-1 at 2, 8-1 at 15. "[I]n the event of the death of any party to this Agreement, who has not elected the Voluntary Retirement Option, their death will constitute an automatic election of the Voluntary Retirement Option." ECF Nos. 1-1 at 2, 8-1 at 16. ECI asserts Allen had not previously elected the Voluntary Retirement Option, and that his passing constituted an automatic election. ECF No. 1-1 at 2.

The MOU further provides that "[a]ny party to this Agreement electing the voluntary retirement option is required to surrender his stock in ECI, if any, in order to receive the voluntary retirement package." ECF Nos. 1-1 at 3, 8-1 at 15. ECI paid the Schick Estate $936,781.99 in satisfaction of the Deferred Payments and is prepared to pay the Compensation Payments and Retained Equity Payments under the MOU. ECF No. 1-1 at 3. ECI alleges that the Schick Estate, through its counsel, advised ECI that it does not intend on paying any income taxes on any of the payments. *Id.* ECI further alleges the Schick Estate claims that ECI agreed to pay all such taxes under the MOU. *Id.*

ECI asserts the parties dispute which party is responsible for the payment of all taxes associated with the Deferred Payments, Compensation Payments, or Retained Equity Payments. *Id.* ECI further asserts the parties dispute the proper interpretation of the compensation provisions of the MOU – an ongoing dispute that

3

immediately impacts tax filings for the Year 2020 (and possibly Year 2019) and thereafter. *Id.*

ECI seeks a declaratory judgment regarding the parties' rights and obligations under the MOU. *Id.* Specifically, they request the Court declare the Schick Estate and all recipients of compensation provided under the MOU be responsible for all income taxes and other taxes due on all such payments, and that those payments are deductible by ECI. ECF No. 1-1 at 4.

Defendants removed under federal question jurisdiction. ECF No. 1. Defendants argue that ECI's claim requires an interpretation of the United States Tax Code as it requires the Court determine to how Deferred Payments, Compensation Payments, or Retained Equity Payments made under the MOU should be treated for tax purposes. *Id.* at 2. Defendants further assert that a state district court does not have authority to make a tax classification determination that is binding on the United States Internal Revenue Service. *Id.* Defendants also claim the Federal Tax Code preempts a state court's ability to interpret the classification of income pursuant to the Internal Revenue Code. *Id.* at 7.

ECI now seeks remand for lack of federal question jurisdiction. ECF No. 6. ECI argues that Defendants' assertions amount to a defense to ECI's claim which cannot form a basis for removal. ECF No. 6-1 at 7. Defendants oppose. ECF No. 8.

## II. Law and Analysis

### A. Standards governing the Motion to Remand.

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). Subject matter jurisdiction must exist at the time of removal, based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). This right, however, is trumped where the area of law is preempted by federal legislation. *Caterpillar*, 482 U.S. at 393.

Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The burden of establishing federal jurisdiction is on the party seeking removal. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Any doubts as to removal must be construed against removal and in favor of remanding the case back to state court. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000), *cert. den.*, 530 U.S. 1229 (2000).

### B. The Court lacks subject matter jurisdiction.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law in either of two circumstances: (1) when federal law creates the cause of action asserted; or (2) if a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance" of federal and state power. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S.Ct. 1562, 194 L.Ed.2d 671 (2016) (concluding that a claim is "brought to enforce" a duty established by federal law only if its "very success depends on giving effect to a federal requirement"); *see also Baca v. Sabine River Authority*, 2017 WL 5957099, at *2 (M.D. La. Oct. 31, 2017) (remanding case); *Klein v. Lewis Title Insurance Company*, 2017 WL 2889370, at *7-*10 (E.D. La. Jul. 7, 2017).

However, it takes more than a federal element "to open the 'arising under' door." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313 (2005)) (remanding and holding a contract claim for reimbursement created by federal law – that arose from a state court personal injury suit – does not require the complete governance of federal law to be declared in a federal forum). "Federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Products, Inc.*, 545 U.S. at 313.

6

Here, Defendants removed, asserting that ECI's claim is based upon the determination of a federal question: the proper tax classification of consideration that was or will be paid by ECI to the Schick Estate. ECF No. 1 at 2. Defendants argue ECI's claim seeks an interpretation of the United States Tax Code. *Id.* In opposition to remand, Defendants argue there is no dispute as to who would be responsible for tax liabilities associated with compensation, but rather a disagreement how the payments are characterized under federal tax law. ECF No. 8 at 2-3. Defendants further argue that because there is no "provision that references who is responsible for paying the tax, the responsibility for the payment of taxes hinges upon how the payments are to be characterized for tax purposes, a federal question based upon the Internal Revenue Code." *Id.* at 2.

Defendants contend ECI seeks a determination of whether the payments are "compensation" for tax purposes or as consideration received in exchange for the sale or redemption of ECI's stock. *Id.* at 5. Defendants attach a copy of the "Stock Surrender Agreement" and MOU. ECF No. 8-1. Defendants argue that if the payments constitute payment for the ECI stock, the Schick Estate would qualify for capital gain treatment, and ECI is entitled to a tax deduction for only the portion treated as interest. ECF No. 8 at 5-6. But if the payments represent compensation for Allen's prior services, Defendants contend the payments are considered compensation income to the Schick Estate taxed as ordinary income. *Id.* Defendants argue that an exception to the well-pleaded complaint is preempted by the enactment of the United States Tax Code. *Id.* at 6-7.

ECI seeks remand on the basis that their claim seeks a determination of a contractual dispute as to who agreed to pay the taxes. ECF No. 6. ECI argues the parties do no dispute that taxes are owed, and they do not dispute the amount of taxes. ECF No. 6-1 at 2. Rather, ECI argues the dispute is solely over which party agreed to pay the taxes on the compensation under the MOU. *Id.* ECI asserts Defendants' contentions amount to a defense under their interpretation of federal law that the transaction was really a stock sale, not "compensation." *Id.* at 7; ECF No. 9 at 2. ECI argues that the Court's resolution of which party agreed to pay under the MOU requires no resolution of the tax treatment or classification by the taxing authority. ECF No. 9 at 2.

The mandatory incorporation of federal standards into a contract does not necessarily create federal jurisdiction in a contract action based on an alleged breach of those standards. *J.A. Jones Const. Co. & Daidone Elec. of N.Y., Inc., a Joint Venture v. City of New York*, 753 F.Supp. 497, 501 (S.D.N.Y. 1990) (citing *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, AFL–CIO–CLC,* 457 U.S. 15, 29 (1982)). And it is well established that "[t]he mere fact that a court necessarily must interpret federal law or federal regulations to determine the merits of a claim is insufficient to confer federal jurisdiction." *J.A. Jones Constr. Co v. City of New York,* 753 F .Supp. 497, 501 (S.D.N.Y. 1990) (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 813 (1986)); *Nelon v. Mitchell Energy Corporation,* 941 F.Supp. 73, 75 (N.D. Tx.1996); *see also Gully v. First Nat'l Bank,* 299 U.S. 109, 115 (1936) ("Not every question of federal law emerging in a suit

8

is proof that a federal law is the basis of the suit"); *Farmer v. Philadelphia Electric Co.,* 215 F.Supp. 729, 731 (E.D. Pa. 1963) ("The fact that federal law may be involved in the interpretation of a contract does not constitute a claim under the Constitution, laws or treaties of the Unites States."). Further, as the United States Court of Appeals for the Fifth Circuit has made clear, "a claim does not arise under the law of the United States pursuant to [section 1331] if the relief sought is based entirely upon a state cause of action in which regulations established by a federal statute are used merely as further evidence of the right to recover under state law." *Till v. Unifirst Federal Savings and Loan Association,* 653 F.2d 152, 156 n.2 (5th Cir. 1981) (citing *Lowe v. General Motors Corp.,* 624 F.2d 1373, 1379–81 (5th Cir. 1980); *see also, Willy v. Coastal Corp.,* 855 F.2d 1160, 1168 (5th Cir. 1988)(citing *Merrell Dow Pharmaceuticals, Inc.,* 478 U.S. at 813)("'[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'").

ECI alleges in its Petition that the MOU provides a "compensation mechanism" for signatories who elect the "Voluntary Retirement Option." ECF Nos. 1-1 at 1, 8-1 at 14. The MOU states that for those who exercise a voluntary retirement option, "compensation [ ] for voluntary retirement shall be as follows . . .." ECF No. 8-1 at 14. ECI seeks a declaratory judgment under the MOU as to whether and which party agreed to pay income taxes on the compensation provided under the MOU. In reviewing ECI's Petition, it is clear that ECI does not ask the court to determine how the payments are characterized and does not ask the court to determine who bears

tax liability under the United States Tax Code in connection with those payments. Thus, a determination of how the compensation is taxed is not before the Court.

Here, the dispute between ECI and Defendants is a state-law contract dispute rather than a claim "arising under" federal law. There is no federal jurisdiction as ECI's claim is essentially a declaratory judgment as to whether the parties did or did not agree that Defendants would pay the taxes under the MOU – not whether, under federal tax code, Defendants' owed the taxes or how the compensation is classified as taxes. ECI merely seeks a declaratory judgment as to the terms of the MOU. Under ECI's allegations, there is nothing to indicate ECI is attempting to challenge federal tax law. And while Defendants may raise compliance with the Internal Revenue Code as a defense in this action, that alone does not mean ECI's claims arise under the Internal Revenue Code. *See Caterpillar*, 482 U.S. at 393; *Beneficial Nat'l Bank*, 539 U.S. at 6 (the presence of a federal defense to a state law claim, even one relying on the preemptive effect of a federal statute, is insufficient to confer federal jurisdiction and will not provide a basis for removal); *see also Cmty. Action Council of S. Texas v. Zarate*, 2010 WL 11646744, at *3 (S.D. Tex. Sept. 8, 2010).

### III.  Conclusion

Because the Court lacks subject matter jurisdiction;

IT IS RECOMMENDED that ECI's Motion to Remand (ECF No. 6) be GRANTED for lack of subject matter jurisdiction, and this case be REMANDED to the Tenth Judicial District Court, Natchitoches Parish, Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this ___28th___ day of July 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE